# In the United States Court of Federal Claims

No. 19-1803T

(Filed: September 14, 2020)

<table>
<tr><td>

**PFIZER INC.,**

              Plaintiff,

      **v.**

**UNITED STATES,**

              Defendant.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Claim for overpayment interest on refund of income taxes; 26 U.S.C. § 6611; genuine issue of material fact precluding summary judgment; discovery allowed; RCFC 56(d)

</td></tr>
</table>

Robert S. Walton, Baker & McKenzie LLP, Chicago, Illinois, for plaintiff.  With him on the briefs were Russell R. Young, Susan E. Ryba, and Cameron C. Reilly, Baker & McKenzie LLP, Chicago, Illinois.

Jason Bergmann, Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Richard E. Zuckerman, Principal Deputy Assistant Attorney General, Tax Division, and David I. Pincus, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Underpinning this tax case is a straightforward question of fact: what happened more than ten years ago when the Treasury Department endeavored to prepare and send to Pfizer Inc. ("Pfizer") five Treasury checks of $99 million each and a sixth Treasury check of $4,528,449.05 as a refund of income taxes overpaid for the 2008 tax year.  If those checks actually were prepared and sent, Pfizer reportedly did not receive them and thus did not negotiate them.  After various communications between Pfizer's tax department and the Internal Revenue Service ("IRS") regarding the refund, the IRS ultimately sent Pfizer $499,528,449.05 by wire transfer on March 18, 2010, which Pfizer received in its bank account on March 19, 2010.  These circumstances have prompted Pfizer's claim for overpayment interest due respecting Pfizer's tax refund for the taxable year ending December 31, 2008, which the IRS has refused to pay.

Pfizer's claim came to the court on transfer from the United States Court of Appeals for the Second Circuit. *See Pfizer Inc. v. United States*, 939 F.3d 173 (2d Cir. 2019). Pfizer initially filed its complaint in the United States District Court for the Southern District of New York, where the parties undertook discovery and filed potentially dispositive motions before the district court rendered a decision against Pfizer. *See Pfizer Inc. v. United States*, No. 16 Civ. 1870 (LGS), 2017 WL 4350581 (S.D.N.Y. June 30, 2017), *vacated and transferred*, *Pfizer*, 939 F.3d 173. Upon transfer, Pfizer filed its transfer complaint in this court on December 18, 2019. After the government filed its answer, the parties conducted no additional discovery and Pfizer promptly submitted a motion for summary judgment. *See* Pl.'s Mot. for Summ. J., ECF No. 12. The government responded opposing summary judgment and with a cross-motion, seeking to reopen discovery. *See* Def.'s Cross-Mot. and Resp. ("Def.'s Cross-Mot."), ECF No. 16. Upon completion of briefing, *see* Pl.'s Reply and Resp. to Cross-Mot. ("Pl.'s Reply"), ECF No. 17; Def.'s Reply, ECF No. 22, a hearing was held on August 19, 2020. The cross-motions accordingly are ready for disposition.

## BACKGROUND[1]

Pfizer is a calendar year taxpayer, and as such was required to file its 2008 tax return by March 15, 2009. *See* Pl.'s Mem. of Law in Support of the Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 13, at 2-3. For the 2008 tax year, corporate taxpayers, like Pfizer, could extend their tax deadline six months by submitting IRS Form 7004, Application for Automatic Extension of Time to File Certain Business Income Tax, Information, and Other Returns, before March 15, 2009. *See id.* at 3. Pfizer timely filed Form 7004 on March 3, 2009 and extended the due date of its 2008 return to September 15, 2009. *See id.* Pfizer timely filed its 2008 tax return on September 11, 2009, claiming a tax overpayment of $769,665,651. *See id.* Pfizer requested a refund of $500,000,000 and directed the IRS to credit the remaining $269,665,651 to its 2009 income tax. *See id.* When the IRS processed the refund, it applied $471,551 to Pfizer's 2007 income tax account, leaving a refund of $499,528,449.05. *See* Def.'s Cross-Mot. at 6. The IRS scheduled the refund to be processed via six Treasury checks—five totaling $99 million each and one totaling $4,528,449.05. *See id.*

The government contends that it processed each of the six checks on October 19, 2009 and mailed them on October 20, 2009. *See* Def.'s Cross-Mot. at 7-13. According to the government, IRS employees entered the six refund amounts into the Secure Payment System, a database that it shares with the Treasury Department's Financial Management Service. *See id.* at 8. The Treasury Department then avers that it processed and mailed the checks via first-class mail from its center in Austin, Texas. *See id.* at 8-13. The checks, however, were never received by Pfizer's tax department in New York. *See* Pl.'s Mem. at 5. Between December 2009 and February 2010, the IRS and Pfizer discussed the missing refund checks on a number of occasions. *See id.* at 4-5; Def.'s Cross-Mot. at 13-14. When the checks could not be located, the IRS cancelled the six refund checks on February 26, 2010. *See* Pl.'s Mem. at 5; Def.'s Cross-Mot. at 15. Thereafter, the IRS executed an electronic funds transfer for $499,528,449.05 on

---

[1] The following recitations do not constitute findings of fact by the court. Instead, the recited factual elements are taken from the complaint and the parties' briefs and attached appendices.

March 18, 2010, which was deposited into Pfizer's account on March 19, 2010.  *See* Pl.'s Mem. at 5; Def.'s Cross-Mot. at 15.

Pfizer brought suit against the United States in the United States District Court for the Southern District of New York seeking interest on its delayed refund pursuant to 26 U.S.C. § 6611.  Pl.'s Transfer Compl., ECF No. 6, at 6.  Section 6611 provides that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax." 26 U.S.C. § 6611(a).  If the interest is refunded to the taxpayer, interest is calculated between the date of overpayment to a date determined by the Secretary, but no more than thirty days *before* the check is tendered to the taxpayer.  *See id.* at 6611(b)(2). Section 6611(e) allows the government to avoid payment of interest when the overpayment "is refunded within 45 days after the last day prescribed for filing the return."  *Id.* at 6611(e)(1).[2]

---

[2] In relevant part, Section 6611 states:

§6611.  Interest on overpayments
  (a) Rate.  – Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621.

  (b) Period. – Such interest shall be allowed and paid as follows:
      (1) Credits. – In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.
      (2) Refunds – In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding the *date of the refund check* by not more than 30 days, whether or not such refund check is accepted by the taxpayer after *tender* of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon.
      . . .

  (e) Disallowance of interest on certain overpayments. –
      (1) Refunds within 45 days after return is filed. – If any overpayment of tax imposed by this title is *refunded* within 45 days after the last day prescribed for filing the return of such tax (determined without regard to any extension of time for filing the return) or, in the case of a return filed after such last date, is *refunded* within 45 days after the date the return is filed, no interest shall be allowed under subsection (a) on such overpayment.
      (2) Refunds after claim for credit or refund – If –
          (A) the taxpayer files a claim for a credit or refund for any overpayment of tax imposed by this title, and
          (B) such overpayment is *refunded* within 45 days after such claim is filed, no interest shall be allowed on such overpayment from the date the claim is filed until the day the refund is made.

26 U.S.C. § 6611(a)-(b), (e) (emphasis added).

On July 15, 2016, the government filed a motion to dismiss for lack of subject matter jurisdiction or, alternatively, to transfer to the Court of Federal Claims, arguing that the Southern District of New York did not have jurisdiction over Pfizer's claim under 28 U.S.C. § 1346(a)(1). *See* Transfer Compl. at 6.   The district court denied the government's motion.   *See id*.   The parties undertook discovery, and the government subsequently filed a second motion to dismiss on the ground that Pfizer's claim was filed outside the two-year statute of limitations.   *See id*. The district court granted the government's second motion to dismiss and later denied Pfizer's motion for reconsideration.   *See id*.

Pfizer appealed to the United States Court of Appeals for the Second Circuit on July 25, 2017.   Transfer Compl. at 7.   The Second Circuit held that 28 U.S.C. § 1346(a)(1) did not grant the district court jurisdiction over the claim.   *Pfizer,* 939 F.3d at 175-79.   The court of appeals noted that Section 1346(a)(1) grants district courts and the Court of Federal Claims concurrent jurisdiction over tax recovery claims for (1) an "internal-revenue tax alleged to have been erroneously or illegally assessed or collected," (2) a "penalty claimed to have been collected without authority," or (3) a "sum alleged to have been excessive or in any manner wrongfully collected under internal-revenue laws."   28 U.S.C. § 1346(a)(1); *see Pfizer*, 939 F.3d at 176. Absent district court jurisdiction, the Court of Federal Claims has exclusive jurisdiction over monetary claims against the United States.   *See* 28 U.S.C. §§ 1346(a)(1), 1491(a)(1).   The Second Circuit ruled that Pfizer's claim for overpayment interest did not fit within Section 1346(a)(1), and therefore the district court lacked jurisdiction.   *See Pfizer.* 939 F.3d at 179.[3]   As a result, the Second Circuit vacated the district court's judgment for lack of subject matter jurisdiction and transferred the case to the Court of Federal Claims.   *See id.*[4]

In this court, Pfizer's motion for summary judgment rests on the premise that no material facts are in dispute, that it never received a timely refund, and that overpayment interest is thus due pursuant to Section 6611.   S*ee* Pl.'s Mem.   The government's cross-motion seeks to open fact discovery to address Pfizer's mail handling procedures in its New York offices.   *See* Def.'s

---

[3] In doing so, the Second Circuit abrogated two decisions by the District of Connecticut that each held that overpayment interest is an "internal-revenue tax" within the meaning of Section 1346(a)(1).   *Pfizer*, 939 F.3d at 177.   In *Trustees of Bulkeley School v. United States*, the District of Connecticut held that a taxpayer who is owed overpayment interest has not received a full refund until he or she obtains the overpayment interest.   628 F. Supp. 802, 803 (D. Conn. 1986).   Similarly, in *Triangle Corp. v. United States*, the district court justified its own jurisdiction by finding that Congress would not have left the taxpayer without a forum to litigate overpayment interest.   592 F. Supp. 1316, 1317 (D. Conn. 1984).   The Second Circuit concluded that the District of Connecticut's decisions misapplied Section 1346 and determined that district courts lacked jurisdiction over overpayment interest cases.   *Pfizer Inc.*, 939 F.3d at 176-77.

[4] The Court of Claims earlier had reached the same result regarding jurisdiction, *see Alexander Proudfoot Co. v.  United States*, 454 F.2d 1379, 1384 (Ct. Cl. 1972), which bound the Federal Circuit and this court to that outcome.   In like vein, very recently the Federal Circuit has followed *Alexander Proudfoot* and also explicitly approved of the Second Circuit's rationale and conclusion in *Pfizer*.   *See Bank of America Corp. v. United States*, 964 F.3d 1099 (Fed. Cir. 2020).

Cross-Mot.  While the case was in the Southern District of New York, the parties conducted discovery about that very issue, with the government examining Pfizer's designated corporate witness regarding "complaints relating to lost, non-received, or misplaced mail" and any investigations into the same.  *Id.* Ex. X.  The government contends that Pfizer failed to meet its obligations to designate a knowledgeable witness in accord with Rule 30(b)(6) of the Federal Rules of Civil Procedure and seeks to reopen discovery to conduct a further deposition related to lost or misplaced mail at Pfizer's New York City offices.  *Id.* at 33-35.  Upon completion of the briefing, *see* Pl.'s Reply; Def.'s Reply, a hearing was held on August 19, 2020.  The cross-motions are now ready for disposition.

## STANDARDS FOR DECISION

### A.  *Jurisdiction*

Under the Tucker Act, the Court of Federal Claims has "jurisdiction to render judgment upon any claims against the United States founded . . . upon . . . any Act of Congress."  28 U.S.C. § 1491(a)(1).  While district courts have concurrent jurisdiction over some internal-revenue tax claims, *see* 28 U.S.C. § 1346(a), the Court of Federal Claims has exclusive jurisdiction over claims for tax overpayment interest, *see Bank of America Corp.,* 964 F.3d at 1109; *Pfizer*, 939 F.3d at 178; *Alexander Proudfoot*, 454 F.2d at 1384 (noting that the "[tax] [c]ode deals quite differently . . . with interest payable by the [g]overnment on overpayments" than it does with tax refunds and interest on underpayments).  Therefore, this court has jurisdiction over Pfizer's claim.

### B.  *Summary Judgment*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC").  A material fact is one that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[5]  A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party.  *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and must "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A).  The court may consider other materials in the record even if not cited by the parties.  RCFC 56(c)(3).  "[T]he inferences to be drawn . . . must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654,

---

[5] Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

655 (1962)).  If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Further, Rule 56(d)(2) provides that "if a nonmovant [for summary judgment] shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition, the court may . . . allow time . . . to take discovery." RCFC 56(d)(2).  Such a motion must articulate "with particularity, what facts the movant hopes to obtain by discovery and how these facts will raise a genuine issue of fact." *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1310 (Fed. Cir. 2006).  When the nonmovant meets this standard, denial of summary judgment and reopening of discovery are appropriate.

## ANALYSIS

### A.  Interpretation of 26 U.S.C. § 6611

The parties dispute the interpretation and application of Section 6611.  Pfizer states that "tender" in Paragraph 6611(b)(2) requires that the government deliver refund checks to the taxpayer to avoid overpayment interest liability.  Pl.'s Mem. at 10.  The government counters that Subsection 6611(e) acts as an exception to Paragraph 6611(b)(2) and only requires the government to issue the refund check within 45 days in order to avoid paying interest on a tax overpayment.  Def.'s Cross-Mot. at 20-21.

Pfizer's argument principally rests on opinions by the United States Courts of Appeals for the Second and Seventh Circuits.  Pl.'s Mem. at 10-12.  In *Doolin v. United States*, the Court of Appeals for the Second Circuit held that Subsection 6611(b)'s use of the word "tender" when describing a taxpayer's refund requires "that a taxpayer has some knowledge of [the refund check] and an opportunity to accept, or decline to accept, the check." 918 F.2d 15, 18 (2d Cir. 1990).  The Court of Appeals for the Seventh Circuit in *Godfrey v. United States* adopted the Second Circuit's analysis.  997 F.2d 335, 337 (7th Cir. 1993).  The Seventh Circuit connected the "tender" reference in Subsection 6611(b) to Subsection 6611(e), holding that "is refunded" in Subsection 6611(e) implicates the tender requirement of Paragraph 6611(b)(2).  *Id.* at 336-37.  Overpayment interest cannot be "refunded" absent tender.  *Id.*[6]  Although these precedents do not bind the court, Pfizer encourages the court to adopt this rationale in full.  Pl.'s Reply at 12.[7]

---

[6] The parties agree that overpayment interest claims are infrequently litigated, especially where delivery is at issue.  To the best of the parties' knowledge—and the court's research—the Second and Seventh Circuits' decisions in *Doolin* and *Godfrey* are the only ones to address the issue of overpayment interest attendant to refunds that failed of delivery, and claims of missing refunds are rare.  *See* Hr'g Tr. 43:24-25 (Mr. Walton:  "I will note that there's only now three cases dealing with this issue that have made it to court."); *see also Doolin*, 918 F.2d 15; *Godfrey*, 997 F.2d 335.

[7] Pfizer acknowledged during oral argument that the government could avoid overpayment interest if the refund was issued within 45 days, provided that the refund was

Defendant asserts that the government can avoid overpayment interest if it *issues* the taxpayer a refund within 45 days, regardless of when or whether the refund is delivered to the taxpayer.  Def.'s Cross-Mot. at 19-26.  The government asks this court to disregard the rulings of the Second and Seventh Circuits and find that delivery is not necessary under Subsection 6611(e).  *Id.* at 23-26.  The government bolsters its argument with reference to the 1993 amendment to Subsection 6611(e), adopted as part of the Revenue Reconciliation Act of 1993, Pub. L. No. 103-66, 107 Stat. 312.  *Id.* at 21-23.  This enactment came after the *Doolin* and *Godfrey* decisions.  *See id.* at 24-25.  The government correctly states that the legislative history consistently refers to the 45-day period in Section 6611(e) as being triggered upon issuance of the refund.  *See, e.g.*, H.R. Conf. Rep. 103-213 (1993).[8]  The 1993 amendment, however, made only minor modifications to the text of Subsection 6611(e).  *See id* at 239, 699; Pl.'s Reply at 13.  The amendment neither altered the "is refunded" or "tender" language upon which *Doolin* and *Godfrey* rely nor mentioned either of those decisions.[9]  There is no indication from the legislative history that legislators were aware of, much less sought to alter, the interpretation of Section 6611 established in *Doolin* and *Godfrey*.  The legislative history explains that the amendment was intended to expand the types of taxes covered by Subsection 6611(e) rather than change the operation of the subsection.  H.R. Conf. Rep. 103-213 at 699.  While the government urges the court to use the legislative history to deviate from the Seventh and Second Circuit's interpretation of Section 6611, a court may only use legislative history to resolve ambiguity in the statutory text and should not "resort to legislative history to cloud a statutory text that is clear."  *Ratzlaf v. United* States, 510 U.S. 135, 147-48 (1994).[10]

---

delivered to the taxpayer in due course even if delivery occurred outside of the 45-day window.  Hr'g Tr. 15:16-19.

[8] The relevant language is as follows: "No interest is paid by the Government on a refund arising from an original income tax return if the return is *issued* by the 45th day after the later of the due date of the return . . . or the date the return is filed."  H.R. Conf. Rep. 103-213 at 699 (emphasis added).

[9] It is unsurprising that *Godfrey* is not mentioned in the legislative history.  Most of the legislative history pre-dates the *Godfrey* decision, which was rendered on June 28, 1993.  *See* 997 F.2d 335.  The Revenue Reconciliation Act of 1993 became law on August 10, 1993.  Pub. L. No. 103-66, 107 Stat. 312.  The Conference Report of the House Committee on the Budget – the main portion of legislative history cited by the government – was published on August 3, 1993.  *See* H.R. Conf. Rep. 103-213.

[10] The government further directs the court to the Federal Circuit's opinion in *Deutsche Bank AG v. United States* and this court's opinion in *Paresky v. United States*.  *Deutsche Bank AG*, 742 F.3d 1378 (Fed. Cir. 2014); *Paresky*, 139 Fed. Cl. 196 (2018).  Both opinions refer to Subsection 6611(e) triggering on issuance of the refund.  *Deutsche Bank AG*, 742 F.3d at 1381 ("A taxpayer claiming a refund . . . is entitled to interest on overpayment when the refund is issued more than forty-five days after the initial due date for filing or the actual return filing date."); *Paresky*, 139 Fed. Cl. at 207 (stating that the IRS could avoid overpayment interest if it had "issued refunds within 45 days").  These statements are dicta and also are not determinative

But the court does not need to resolve this question of statutory interpretation on motion for summary judgment.  There are genuine disputes of fact both as to whether the Treasury issued and mailed the checks and whether the checks were appropriately delivered to Pfizer.  Under either party's proposed formulation of Section 6611, material disputes of fact bar summary judgment.

### B.  Material Disputes of Fact

On the issue of mailing and issuance, Pfizer argues that "the [g]overnment has failed to produce *any* evidence that the Six Refund Checks were ever mailed."  Pl.'s Mem. at 13 (emphasis in original).  This argument, however, fails to account for evidence of the Treasury's routine refund processing and mailing procedures and evidence showing that Pfizer's refund checks were processed according to these routine procedures.  *See* Def.'s Cross-Mot. Exs. C-D, K, M, Attachs. 1, 5.  While Pfizer correctly notes that the government has not produced evidence of envelopes or return receipts, Pl.'s Mem. at 13, such evidence is not required to prove mailing.  "Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice."  Fed. R. Evid. 406.  The government's contemporaneous business records, coupled with an explanation of IRS refund check processing procedures, ostensibly satisfies Rule 406.

The Manual Refund Posting Vouchers indicate that the IRS scheduled five checks for $99 million and one check for $4,528,499.05, *see* Def.'s Cross-Mot. Exs. C-D, and Treasury business records display the times and dates of the Treasury's automated process to print and mail Pfizer's refund checks, *see id.* Exs. K, M.  Further, the government presented two declarations describing the IRS's scheduling, issuing, and mailing procedures of Treasury checks generally, and Pfizer's checks specifically.  *See id.* at Attachs. 1, 5.  Pfizer's checks appear to have followed the normal Treasury issuance and mailing process, and courts may presume that "what appears regular is regular."  *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001).

Pfizer cites contrary evidence in the record, including a declaration of Pfizer's Senior Tax Manager, Robert Gerken, and an email from IRS employee Judy English that stated she had "just heard from [the] inquiry unit . . . [and t]hey have confirmed that the checks weren't sent & stopped the request."  Pl.'s Mem. Ex. 4 ¶ 8.  Additionally, while one or two missing checks could be attributable to an error by the United States Postal Service or Pfizer's mail handling practices, the fact that Pfizer's tax department never received *any* of the six checks raises a serious question as to whether the checks were issued and mailed according to routine process.[11]  These questions, however, are factual in nature.  The court cannot weigh evidence on summary judgment but must view all evidence in the light most favorable to the nonmovant.  *See*

_____

of the interpretive issue at hand – the interplay between Paragraph 6611(b)(2) and Subsection 6611(e).

[11] The five refund checks for $99 million each were reportedly prepared and mailed in the same way, but the sixth check for $4,528,449.05 was prepared and mailed separately.  *See* Def.'s Cross-Mot. at 6-10.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Here, there is a material dispute as to whether the checks were issued and mailed and, therefore, summary judgment is inappropriate.

Genuine factual disputes also remain as to the question of delivery. Both Pfizer and the government agree that the government should be afforded a presumption of delivery when the government properly mails refund checks. Pl.'s Mem. at 11; Def.'s Cross-Mot. at 29-30. Other courts that have evaluated the presumption of delivery, including the United States Courts of Appeals for the Second and Seventh Circuits, have found that the presumption can be rebutted when the recipient presents evidence that the mail was never received. *Doolin*, 918 F.2d at 18-19; *Godfrey*, 997 F.2d at 388. Because the checks were not received by Pfizer's tax department and there are genuine disputes as to whether the checks were actually and properly mailed, the court cannot evaluate the presumption of delivery on summary judgment.

The government questions the reliability of Pfizer's mail system for its New York City offices and seeks to reopen discovery in order to collect additional evidence of Pfizer's mail practices. *See* Hr'g Tr. 33:11 to 34:3 (Aug. 19, 2020).[12] Both parties agree that the refund checks should have been sent to the address included on Pfizer's tax returns—150 East 42nd Street, New York, New York. Pl.'s Mem. at 4; Def.'s Cross-Mot. at 15. Any mail sent to 150 East 42nd Street or Pfizer's other Manhattan offices follows an established process. Def.'s Cross-Mot. at 15-16. A third-party contractor collects all mail from the nearby United States Post Office. *Id.* at 15. The mail is taken to Pfizer's central mailroom at 219 East 42nd Street where it is sorted and later transported to various offices and departments. *Id.* at 16-17. Pfizer asserts that it regularly receives timely correspondence from the federal government, including from the IRS. Pl.'s Reply at 8; Hr'g Tr. 47:7-9. Therefore, according to Pfizer, there is reason to expect that Pfizer would have received checks properly delivered to Pfizer's mail department, yet none of the six checks made it to Pfizer's New York tax department. Pl.'s Reply at 3-4, 8; Hr'g Tr. 47:7-19.

During discovery, the government sought to examine, under Rule 30(b)(6) of the Federal Rules of Civil Procedure, a Pfizer witness as to "all incidents in which Pfizer lost or allegedly failed to receive mail addressed to Pfizer at 150 East 42nd Street, New York, New York" and related investigations into missing mail. Def.'s Cross-Mot. at 34, Ex. X. Pfizer designated Timothy Mahoney, Pfizer's New York Site Operations Manager, whom the government deposed on March 31, 2017. Pl.'s Reply Ex. 2. During his deposition, Mr. Mahoney stated that while he did not undertake additional efforts to prepare for the deposition, he was not aware of any complaints regarding lost, non-received, or misplaced mail. Def.'s Cross-Mot. at 18-19; Pl.'s Reply Ex. 2 (Mahoney Dep. 42:18 to 44:4). The government argues that due to Mr. Mahoney's lack of inquiry into the incidents of lost mail, Pfizer has failed comply with its Rule 30(b)(6) obligations. Def.'s Cross-Mot. at 33-35. The government additionally asserts that a proper inquiry into this topic will allow it to contest Pfizer's arguments regarding the issue of delivery. Hr'g Tr. 33:21 to 34:6.

---

[12]The date will be omitted from further citations to the transcript of the hearing conducted on August 19, 2020.

Rule 56(d)(2) of the Rules of the Court of Federal Claims allows the court to reopen discovery when a nonmovant for summary judgment articulates "with particularity which facts the [party] hopes to obtain during discovery and how these facts will raise a genuine issue of fact." *Exigent Tech.*, 442 F.3d at 1310.  Although Pfizer contends that Mr. Mahoney would have been aware of incidents of lost mail, Pl.'s Reply at 22-26, the court concludes that additional discovery on Pfizer's mail practices could assist the government in combatting Pfizer's delivery arguments.  Thus, the government has satisfied the requirements of Rule 56(d)(2).  When a party satisfies the requirements of Rule 56(d)(2), the court's appropriate course of action is to deny the motion for summary judgment and allow further discovery.  RCFC 56(d)(2).  There are disputes of fact as to whether the checks were in fact delivered, which can be clarified through additional discovery. The court, therefore, must deny Pfizer's motion for summary judgment and reopen discovery for both parties.

**CONCLUSION**

For the reasons stated, Pfizer's motion for summary judgment is DENIED and the government's cross-motion to reopen discovery is GRANTED.  Genuine disputes of material fact exist regarding Pfizer's claims and are not limited merely to those identified in this opinion. The court requests that the parties file a joint status report by September 30, 2020 with a proposed schedule for discovery and further proceedings in this case.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge